## NOONAN vs. ILSLEY.

*Complaint on chattel due bill: allegation of a promise—Set-off admitted, no ground of nonsuit—Chattel due bill: statute of limitations—Breach of covenant of seizin: damages: rights of grantor and grantee—Covenant against incumbrances: damages for breach.*

1. A complaint upon a due bill, payable in chattels, which sets out the same *verbatim*, with suitable allegations as to its execution by defendant and delivery to plaintiff, is not defective because it does not otherwise aver a *promise* by the defendant.

2. It is no ground for a nonsuit, that the pleadings admit a set-off in favor of defendant exceeding plaintiff's claim as shown by his own evidence.

3. On a due bill payable in railroad stock, *it seems* that the statute of limitations does not commence to run until demand is made for the stock. If otherwise, still the maker of the bill has a reasonable time within which to tender the stock, and under the circumstances of this case the court cannot hold that a delay of thirty-eight days was unreasonable, the objection being taken by the debtor for the purpose of barring the suit.

Noonan vs. Ilsley.

4. Where there is neither title in the grantor in a deed, nor possession nor right of possession in the grantee or his assigns, for more than six years after the execution of the deed, the rule of damages for breach of the covenant of seizin is either the value of the use of the possession for that period, or interest on the consideration money—probably the latter.

5. Where the grantee in a deed has recovered a judgment for the full amount of the consideration, and the same has been collected, the right of possession as against him revests in the grantor, and title subsequently acquired by the grantor does not enure to the benefit of the grantee. But whether this would be so upon the mere rendition of the judgment, and before its collection, *quære*. DOWNER, J., *arguendo*.

6. Where the grantee has never acquired the possession or right of possession before commencing his action for breach of the covenant of seizin, can the grantor, after the commencement of such action, acquire title and compel the grantee to take the land?

7. For a breach of a covenant against *incumbrances*, the general rule is that the grantee can recover only nominal damages, unless he has paid the incumbrance.

8. Where it was proved that the vendee bought for the purpose of re-sale, but not that the vendor knew the fact, nor that the incumbrance (which was a mortgage,) prevented a re-sale, nor that the other lots embraced in the mortgage were not worth more than the mortgage debt, nor that the vendor was insolvent : *Held*, that the case must be governed by the general rule.

APPEAL from the Circuit Court for *Dane* County.

In March, 1856, plaintiff sold to defendant four lots in the city of Milwaukee, for $1000 in money, and ten shares of stock in the Milwaukee and Watertown railroad, of the nominal value of $100 each; and gave him a warranty deed with full covenants. Defendant paid the money, and certificates for seven shares of stock, and gave the following due bill for the remaining three shares : " Due to *Josiah A. Noonan*, three hundred dollars in Watertown Railroad Stock. Milwaukee, March 22, 1856. CHARLES F. ILSLEY." The plaintiff in this action (which was commenced in April, 1862), alleges demand and refusal of the stock in June, 1856, and that its value at the time was eighty per cent. of its face; and demands judgment for $240, with interest, &c. The defendant pleaded the statute of limitations, and also alleged a breach of the covenant against incumbrances in plaintiff's deed, in that there was

at the time of its execution, and until November 25th, 1857, an outstanding mortgage for $3,872 upon two of the lots in question, as well as upon other lands; that after defendant became aware of the existence of such mortgage, he refused for that reason to deliver the three shares of stock; but that after the discharge of the mortgage, he had always been and still was ready and willing to deliver them, but plaintiff had refused to receive them. The answer then sets up a counter-claim for damages for the breach of said covenant, alleging that defendant purchased the lots solely for the purpose of re-sale, as plaintiff at the time well knew. There was a reply in denial of the counter-claim. By a supplemental answer, defendant alleged, both by way of defense and counter-claim, a breach of plaintiff's covenant of seizin as to two of the lots, being the same two before alleged to have been encumbered. Reply, in denial.

At the trial, an objection to the admission of testimony under the complaint, on the ground that it did not allege any promise, was overruled. After the plaintiff had introduced the due bill, and evidence as to a demand made, and as to the value of the stock, and rested, the defendant moved for a nonsuit, on the grounds that it appeared that the action was barred, and that plaintiff had not shown his title. Motion denied. The plaintiff admitted the existence of a mortgage upon the lots (and other lands) at the time of sale, not discharged of record until November 25, 1857, as alleged in the complaint. A quit-claim deed from the plaintiff to one Kasson of two of said lots, executed and recorded in September, 1852, was put in evidence, and plaintiff admitted that there was no re-conveyance of said lots from Kasson to him, before November 26, 1862; and that the four lots were of about equal value. As a witness for himself, defendant said; "I bought the property for the purpose of re-selling it, and would not have purchased it if I had known of the incumbrance. I

had no conversation with *Mr. Noonan* before the trade. Mr. Wall was my agent to purchase the property." Mr. Wall testified: "I knew that *Mr. Ilsley* purchased the property for the purpose of re-sale; but I don't know that *Mr. Noonan* was aware of the fact." Defendant's evidence as to other points need not be stated. Plaintiff then proved, 1. That on the 31st of December, 1851, one Jamieson was seized in fee and possessed of the two lots covered by plaintiff's aforesaid deed to Kasson; and that he deeded them to plaintiff in March, 1852. 2. That the defendant conveyed the same two lots to one Silkman on the 1st of May, 1856, the consideration named in the deed being $2,200. 3. That Kasson deeded said lots to plaintiff in November, 1862. Defendant objected to proof of the last two facts as irrelevant.

The court instructed the jury that if plaintiff first demanded the stock of defendant within six years before the commencement of this action, they must assess his damages at the value of the stock at the time of the demand, with legal interest from that time; that defendant could recover only nominal damages for the breach of his covenant against incumbrances; and that if there was a breach of the covenant of seizin, and plaintiff subsequently acquired the title which enured to the benefit of defendant and his grantee, defendant could recover for such breach only nominal damages.

Verdict for plaintiff for $305.61; new trial denied; and from a judgment upon the verdict, defendant appealed.

*Wells & Brigham,* for appellant:

1. Even in an action on a promissory note, a promise would have to be alleged, but for sec. 24, ch. 15, R. S.; and that section relates only to instruments for the payment of money. 2. The court should have granted a nonsuit. (1.) The defendant set up a counter-claim for a breach of covenant of seizin. *Walker v. Wilson,* 13 Wis., 527. The burden of proof was on the vendor. *Mecklem v. Blake,* 16 Wis., 102; *Beckmann v.*

*Henn*, 17 id., 412. (2.) The action was barred. By its terms the due bill was payable immediately. A due bill of this character is subject to the same rules as are applied to due bills for the payment of money. *Clay v. Huston*, 1 Bibb, 461; *Gordon v. Parker*, 2 S. & M., 495. 3. The court erred in admitting evidence of the title acquired by plaintiff after the filing of the supplemental answer, and not alleged in his pleadings. Such subsequently acquired title was no defense. Rawle on Cov. (3d ed.), 82–87; *Tucker v. Clarke*, 2 Sandf. Ch. 96; *Blanchard v. Ellis*, 1 Gray, 199. 4. "The court will not presume that the purchaser ever was in possession of land to which he acquired no title by the conveyance." *Tallmadge v. Wallis*, 25 Wend., 118. In the following cases damages were recovered on breach of the covenant of seizin, where no actual eviction had occurred; *Marston v. Hobbs*, 2 Mass., 433; *Bickford v. Page*, id., 455; *Smith v. Strong*, 14 Pick., 128; *Whiting v. Dewey*, 15 id., 435; *Guthrie v. Pugsley*, 12 Johns., 126. But however it may be where the vendee obtains possession under his deed, if he fails to get either title or possession under it, he may recover for breach of the covenant of seizin to the extent of the consideration paid. And if, when the demand was made, on which this action is based, defendant had a right to such damages, it was a complete defense to this suit; and he cannot be deprived of it by title acquired since the commencement of the suit. 5. Counsel contended that the breach proven of the covenant against incumbrances, entitled defendant to damages sufficient to defeat this action. Rawle on Cov., 136; *Batchelder v. Sturgis*, 3 Cush., 201; *Wetherbee v. Bennett*, 2 Allen, 428.

*Wm. F. Vilas*, for respondent, to the point that no cause of action accrued until plaintiff made demand for the stock, cited *Noonan v. Ilsley*, 17 Wis., 314. 2. Here was an executed agreement on the part of the plaintiff; he had given a deed with full covenants, and defendant had acquired possession and

control of the property; had in fact conveyed it to a third person, and had never been disturbed in his possession. Under these circumstances, the defendant could not refuse payment of his due bill on the ground of a technical breach of the covenant of seizin. Platt on Cov., 90, and cases there cited.

DOWNER, J. The appellant maintains that the circuit court erred in receiving the due bill in evidence, because the complaint alleged no promise on the part of the defendant. The due bill was set out *verbatim* in the complaint, and that contains a promise either express or implied. We see no defect in the complaint.

2. The refusal of the court below to grant a nonsuit (for the reasons, first, that when the plaintiff rested it was admitted by the pleadings that the plaintiff was indebted to the defendant on the covenant of seizin more than the amount demanded by the complaint; and, second, that more than six years had elapsed since the cause of action accrued before the suit was commenced), is the second error assigned. It is obviously no ground of nonsuit, that the set off or counter-claim exceeded the demand of the plaintiff. The plaintiff may have brought his action for the very purpose of compelling a settlement, or preventing the running of the statute of limitations. The other ground is also untenable. The weight of authority is to the effect that the cause of action did not accrue until demand made by *Noonan* for the stock. But if we should follow the authorities most favorable to the appellant, which are to the effect that *Ilsley*, within a reasonable or convenient time, should have tendered *Noonan* the stock, we could not decide, as a matter of law, under the circumstances of this case, that a delay of thirty-eight days was unreasonable; and that was all the time that had elapsed over six years after the due bill was made, when the suit was commenced.

3.  The circuit court instructed the jury: "If you find a breach of the covenant of seizin, and that the plaintiff has subsequently acquired the title, which enures to the benefit of the defendant and his grantee, then the defendant is entitled to recover only nominal damages." The giving of this instruction is assigned for error. Under the pleadings, the burden of proof was on the plaintiff to show that at the time he made and delivered the deed to *Ilsley*, he was seized of a good title in fee simple. 16 Wis., 102; 17 id., 412. He failed to prove this, but the proof showed that at the time of making the deed, the title to two of the lots was in one Kasson; and the respondent (plaintiff below) gave in evidence a deed of these two lots to him from Kasson, dated and recorded after the commencement of this action, and in November, 1862. It was also proved that by a deed dated May 1, 1856, *Ilsley* conveyed these two lots to one Silkman. There is no proof as to actual possession of the lots at any time either by *Noonan*, or *Ilsley*, or Silkman. As there is nothing to prove either title or right of possession in *Ilsley* or Silkman before November, 1862, we cannot presume that either of them was in actual possession before that time, and the constructive possession, if the lots were vacant, was in Kasson. The question then is: What is the rule of damages on the breach of a covenant of seizin, when there was no title in the grantor, or possession or right of possession in the grantee or his assigns, for more than six years after the execution of the deed? Does the mere acquiring of the title to the lots at that late day by the grantor prevent his grantee from recovering anything but nominal damages?

He was entitled to a fair indemnity for all damages he had sustained. All the rules on the subject have been framed with a view to give him such damages as will indemnify him. These rules, so far as they have any bearing on the question

we are now considering, are in substance as follows : If there is an entire failure of title, and the vendee has had no actual possession, he is entitled to recover the purchase money and interest from the date of the deed ; if the title to a part of the land only fails, he is entitled to recover the purchase money and interest of that part. If the title fails and he has had actual possession of the land, he is entitled to recover the purchase money and interest thereon for such length of time as he himself may be liable for the use and occupation of the premises to the rightful owner, which is in most of the states not exceeding six years preceding the rendition of the judgment. If he has had possession until the statute of limitations has closed upon all adverse claims, and the title is thus perfected in him, he can recover only nominal damages ; and if there is a covenant of warranty in the deed to him, and his grantor, before suit commenced, and probably before judgment in the action for breach of the covenant of seizin, acquires the title, it enures to his benefit, and if he has had possession and is not liable to any one for the use of the premises, the damages are nominal. *Whiting v. Dewey*, 15 Pick. 435 ; *Smith v. Strong*, 14 Pick., 128 ; *Martin v. Hobbs*, 2 Mass., 433 ; id., 455 ; *Tanner v. Livingston*, 12 Wend., 83 ; *Calkins v. Harris*, 9 Johns., 324 ; *Staats v. Ten Eyck*, 3 Caines, 111 ; *Bender v. Flamberger*, 4 Dallas, 436 ; Rawle on Cov. Tit., 57 et seq.; *Spring v. Chase*, 22 Maine, 508 ; *Garfield v. Williams*, 2 Vt., 327. According to these authorities, if *Ilsley* or his vendee had had actual possession of the premises from the date of the deed of *Noonan* to him, he would still have the right to recover damages equal to interest on the consideration money of the two lots for six years preceding the delivery of the deed of Kasson to *Noonan*, if the trial had taken place at or about the date of that deed ; for the reason that the occupant would be liable to Kasson. It can hardly be contended that the damages should be less when the deed of *Noonan* gave to *Ilsley* no right of possession, and was

followed by no actual possession. The true rule of damages in such case must be, either the value of the use of the premises for the time the grantee or his vendee had neither possession nor the right of possession; or interest on the consideration money for that time; and we think the latter. Such damages the instruction precluded *Ilsley* from recovering, and for that reason the judgment must be reversed. *Baxter v. Bradbury*, 20 Maine, 260, *Reese v. Smith*, 12 Missouri, 344, and some other authorities, are cited by the respondent's counsel as sustaining the position that *Ilsley* could recover only nominal damages. In *Baxter v. Bradbury*, the plaintiff (grantee in the deed) had been in uninterrupted possession of the premises, and it does not appear that the question was raised or considered by the court, as to his liability by reason of such possession to any one; and from the facts of the case it is probable there was no such liability; or if there was, it was only for nominal damages. In *Reese v. Smith*, a judgment in an action at law for breach of covenant of seizin for the full amount of the purchase money and interest, was enjoined, and the purchaser compelled to accept the title from the representative of the grantee acquired by him after the rendition of the judgment at law. Two of the judges concurred in the opinion; the other dissented on the ground that a court of equity had no jurisdiction of the action. On principle that decision cannot be sustained, and we know of no authority to sustain it. It is directly in conflict with *Tucker v. Clarke*, 2 Sandf. Ch., 96; and cannot be reconciled with *Porter v. Hill*, 9 Mass., 36; *Stinson v. Sumner*, id., 150; *Blanchard v. Ellis*, 1 Gray, 202; *Parker v. Brown*, 15 N. H., 188, and other authorities, which hold that the recovery of damages upon the covenant of seizin to the full amount of the consideration money and interest, will of itself operate to revest the title in the covenantor, or give him the right of possession as against the covenantee, and estop the latter from claiming any title or interest in the premises under

or by virtue of any conveyance thereafter to the covenantor. In the case of *Ludlow v. Gilman*, 18 Wis., 552, also cited by the respondent, the conveyance was of all the right, title and interest of the grantor ; and the grantee (defendant in that suit) did not set up a covenant of seizin and breach of the same, but fraudulent representations as to the title of the grantor, who was dead, and his representatives not before the court so that such representations could properly be inquired into.

4. The appellant contends that the title acquired by *Noonan* after the filing of the counter-claim setting up a breach of the covenant of seizin, would not enure to his benefit, but that he had a right to recover for breach of the covenant the full consideration money and interest. Before what act a title thus acquired by a grantor will enure, and after which it will not enure, to the benefit of his grantee, it may be difficult to determine. We are inclined to the opinion that the rendition of judgment, in an action on the covenant of seizin, for the full consideration money and interest, is such an act. We have some doubts, however, whether judgment without satisfaction is sufficient. For if the judgment alone vests in the grantor the immediate right of possession of the premises which he delivered to his grantee, the latter might be deprived of the possession, and yet be unable to collect his judgment. On the other hand, if the grantor gives to his grantee neither possession nor title, should he be permitted after a delay of years to perfect the title, and, after suit brought on his covenant, then to purchase the land and compel his vendee to take it, when it may have greatly depreciated in value ? We leave this question undecided, as this case has previously been before us on a somewhat different state of facts, and on another trial the evidence may be different.

5. The appellant claims that he was entitled to recover more than nominal damages on the covenant against incumbrances. The amount of the mortgage incumbrance exceeded

the value of the premises, and he alleges he bought them for the purpose of re-sale. But it is not proved that *Noonan* knew he bought them for the purpose of re-sale; or that the mortgage prevented him from selling; or that the other lots embraced in the mortgage were not of greater value than the amount of the mortgage; or that *Noonan* was insolvent. On the contrary, it appears that *Ilsley* did sell the lots, or a part of them, and that the mortgage was paid and discharged within eighteen months after the date of the deed to him. The general rule is, that the grantee can recover on this covenant only nominal damages, unless he has first paid the incumbrance. We do not think there are sufficient reasons to make this case an exception to the rule.

DIXON, C. J. As the proofs show neither title nor right of possession in *Ilsley* or Silkman before November, 1862, I agree that we cannot presume that either of them was in actual possession of the lots prior to that time. On the contrary, I think the presumption, in the absence of any testimony upon the subject, is that the possession, either actual or constructive, was in Kasson, who was the real owner. Under these circumstances, I think the covenant of seizin was broken as soon as made, and that the right of action upon it did not pass to Silkman by virtue of the conveyance to him, but that it remains in *Ilsley* to recover such damages as he has actually sustained. As stated in the opinion, I think the measure of damages in such a case is interest on the consideration money during the time the grantee was thus deprived of the possession, or for six years next before the commencement of the action. For this reason I think the instruction that the defendant was entitled only to nominal damages, was erroneous. As to the measure of damages in other cases of breach of the covenant of seizin, it being unnecessary to consider it here, I express no opinion.

Cole, J. I concur in the views of the chief justice, and do not wish to be understood as expressing any opinion upon the other questions so fully discussed by Mr. Justice Downer.

*By the Court.*—Judgment of the circuit court reversed, and a *venire de novo* awarded.